☐   **New Matter**

√  ☐**Amendment Relating to a Pending Matter**

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE: FRESENIUS GRANUFLO/NATURALYTE DIALYSATE PRODUCTS LIABILITY LITIGATION** | **MDL NO. 1:13-MD-2428-DPW** |
| **This Document Relates to:** | **SHORT-FORM COMPLAINT AND DEMAND FOR JURY TRIAL** |
| *1:13-cv-10887-DPW* | |
| **Jeffrey Alex Meeks** <br>     **Plaintiff** | |
|     **v.** | |
| **Fresenius Medical Care Holdings, Inc., Fresenius Medical Care North America, Inc., Fresenius USA, Inc., Fresenius USA Manufacturing, Inc., Fresenius USA Marketing, Inc., Fresenius USA Sales, Inc., and John Does 1-5** <br>     **Defendants** | |

    The Plaintiff(s) named below file this *Short-Form Complaint* against the Defendants named below and incorporate *The Master Complaint and Jury Demand* filed in MDL No. 2428 by reference. Plaintiff selects and indicates by checking-off where requested, those products, Parties and claims that are specific to his or her case.  Plaintiffs (s) further allege as follows:

1.    Plaintiff   Jeffrey Alex Meeks  

2.    Plaintiff's Spouse (*if applicable*)_____

3.    Other Plaintiff and capacity, if applicable (*i.e.,* administrator, executor, guardian, conservator, etc.)_____

4.      State of Residence_____

5a.     √ ☐    By checking here, I choose Massachusetts as the "home" forum.

5b.     If you did not chose Massachusetts as the "home" forum, identify the United States
        District Court and Division in which venue would be proper absent direct
        filing_____

6.      Defendant(s)[*check each Defendant against whom Complaint is made*]:[1]

        √ ☐    FRESENIUS MEDICAL CARE HOLDINGS, INC.

        √ ☐    FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a FRESENIUS
        MEDICAL CARE NORTH AMERICA

        √ ☐    FRESENIUS USA, INC.

        √ ☐    FRESENIUS USA MANUFACTURING, INC.

        √ ☐    FRESENIUS USA MARKETING, INC.

        √ ☐    FRESENIUS USA SALES, INC.

        ☐    FRESENIUS MEDICAL CARE AG & CO. KGaA.

        ☐    FRESENIUS MEDICAL CARE MANAGEMENT AG.

        ☐    FRESENIUS SE & CO. KGaA.

        ☐    FRESENIUS MANAGEMENT SE.

        √ ☐    Other  John Does 1-5

7.      Basis of Jurisdiction

        √ ☐    Diversity of Citizenship

        √ ☐    Other:  Amount in controversy exceeds $75,000, exclusive of interests and costs

        Other allegations of jurisdiction and venue:

_____

[1] If additional Counts and/or Counts directed to other Defendants are alleged, the specific facts supporting these allegations must be pleaded by the Plaintiff in a manner complying with the requirements of the Federal Rules of Civil Procedure, and the Defendants against whom they are alleged must be specifically identified on a separate sheet of paper attached to the *Short Form Complaint.*

_____
_____
_____
_____

8.    On or about <u>05/30/2009 and 06/30/2009</u>, Plaintiff had the following injury:

<u>chest pains and aggravated hypertension on 05/30/2009 and on 06/30/2009, three</u>
<u>episodes of acute inferior myocardial infarction.  Both dates of injury occurred on the</u>
<u>same day as patient's dialysis treatments and are alleged to have been caused by</u>
<u>Defendants' NaturaLyte and/or GranuFlo product(s) administered to Plaintiff for dialysis</u>
<u>treatment at</u>:

<u>Fresenius Medical Care</u>
<u>609 Tallahatchie Street</u>
<u>Greenwood, MS 38930.</u>

9.    The following claims asserted in *The Master Complaint and Jury Demand*, and the
allegations with regard thereto, are herein adopted by reference:

☐    Count I –      STRICT LIABILITY

√ ☐    Count II –     NEGLIGENT FAILURE TO WARN

☐    Count III –    NEGLIGENT DESIGN

√ ☐    Count IV –     NEGLIGENCE

√ ☐    Count V –      NEGLIGENT MISREPRESENATION

√ ☐    Count VI –     BREACH OF IMPLIED WARRANTY OF
                MERCHANTABILITY

√ ☐    Count VII –    BREACH OF IMPLIED WARRANTY OF FITNESS FOR
                PARTICULAR PURPOSE

√ ☐    Count VIII –   BREACH OF EXPRESS WARRANTY

√ ☐    Count IX –     FRAUD

☐    Count X –      VIOLATION OF CONSUMER PROTECTION LAWS

☐    Count XI –     LOSS OF CONSORTIUM

☐    Count XII –    WRONGFUL DEATH

3

☐        Count XIII –   SURVIVAL ACTION

√ ☐      Other Count(s) (*See* FN 1) <u>Massachusetts Consumer Protection Law M.G.L. c.</u>
<u>93A, Product Liability, Fraudulent Misrepresentation, Fraudulent Concealment, Civil</u>
<u>Conspiracy, and Aiding & Abetting</u> (See "Attachment 1")

10.     Plaintiff asserts the following additional theories against the Defendants identified
        in Paragraph 6 above (*See* FN 1):

|  |
|--|
|  |
|  |
|  |

11.     Plaintiff asserts the following additional theories against Defendants <u>other than</u>
        those identified in Paragraph 6 above (*See* FN 1):

|  |
|--|
|  |
|  |
|  |
|  |

        **WHEREFORE**, Plaintiff prays for relief as set forth in *The Master Complaint and Jury*

*Demand* filed in MDL No. 2428.

_____
Jesse Mitchell, III (MS Bar No. 103020)
THE MITCHELL FIRM, PLLC
774 Avery Blvd., Suite G
Ridgeland, Mississippi 39157
Telephone:      (769)300-0462
Facsimile:      (601)510-1981
jmitchell@themitchellfirms.com
*Attorney for Plaintiff*

4

"Attachment 1"

OTHER COUNT I:  PRODUCT LIABILITY

1.

The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein again.

2.

The Plaintiff hereby asserts a design defect claim pursuant to the Mississippi Product Liability Statute, Miss. CODE. ANN. § 11-1-63, and other applicable Mississippi law.

3.

At all times relevant to the Complaint, Fresenius Medical Care Holdings, Inc., Fresenius Medical Care North America, Inc., Fresenius USA, Inc., Fresenius USA Manufacturing, Inc., Fresenius USA Marketing, Inc., Fresenius USA Sales, Inc., and John Does 1-5, the Fresenius Defendants or Defendants, were in the business of designing, manufacturing, marketing, testing and distributing dialysis products.   The product at issue was defective and unreasonably dangerous at the time it left the hands of the Defendants.  Defendants placed their product into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product.

4.

Defendants designed their product differently from preexisting products resulting in an unreasonably dangerous and defective product.  According to Defendants, "bicarbonate-based dialysis products deliver additional buffering capacity through mixing and metabolism of acetate, acetic acid or citric acid when mixed for dialysate;" however, only Defendants'

product delivered excessive acetate and significantly and unprecedentedly increased the total buffer. The liver quickly converts acetate to bicarbonate in the liver. This can contribute to metabolic alkalosis, which can cause dialysis patients' blood pressure to plummet leading to cardiac arrest and stroke. The cause of bicarbonate-induced alkalosis in dialysis patients was Defendants' inappropriately high dialysate total buffer concentration.

5.

Defendants' product was unreasonably and dangerously defective beyond the extent contemplated by ordinary users with ordinary knowledge regarding these products. Plaintiff and his health care providers were unaware of the danger as Defendants provided ineffective and inadequate warnings and instructions, at best, and deliberately misled them.

6.

Defendants' product was defective due to inadequate post-marketing warnings and instructions, and/or inadequate testing and studies, and/or inadequate reporting regarding the results. Defendants' product was defective due to inadequate post-marketing warnings or instructions because, after Defendants knew or should have known of the risks, they failed to provide adequate information to the medical community and patients, but continued to promote the product as safe and effective.

7.

Defendants' product was defective in light of the dangers posed by its design and the likelihood of those avoidable dangers. Defendants' product was defective because the inherent risk of harm in Defendants' product design outweighed the utility or benefits of the existing product design. Defendants' product was defective because reasonably cost-effective

and feasible state-of-the-art alternatives existed at the time that would not have undermined the product's usefulness.

8.

Defendants were aware of effective substitutes for the product, including their own alternative concentrates and dialysis machine enhancements. The gravity and likelihood of the dangers posed by the product's design outweighed the feasibility, cost, and adverse consequences to the product's function of a safer alternative design that Defendants reasonably should have adopted.

9.

There was a safer alternative design that would have prevented or significantly reduced the risk of injury. It was reasonable as well as economically and technologically feasible at the time the product left Defendants' control by the application of existing or reasonably achievable scientific knowledge.

10.

Defendants failed to comply with industry standards, including federal or state safety standards and regulations, and industry-wide customs, practices, and design standards. Defendants' noncompliance with such standards demonstrates the product design selected was unreasonable considering the feasible choices of which Defendants knew and should have known. Despite any instances of compliance with such standards, Defendants' product still contained a design defect.

11.

The defective and unreasonably dangerous conditions discussed herein existed when

the product left Defendants' control.  They existed when Defendants sold the product.  They existed when Plaintiff received it.

12.

Defendants' conduct showed willful, malice, wantonness, oppression, or that entire want of care that raises the presumption of conscious indifference to consequences.

13.

As a direct and proximately result of the design defect and the Defendants' conduct alleged herein, Plaintiff suffered damages for which a cause of action is hereby stated.

OTHER COUNT II:  FRAUDULENT MISREPRESENTATION

14.

The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein again.

15.

Defendants committed actual and constructive fraud.  Defendants committed constructive fraud by acting contrary to legal or equitable duties, trust, or confidence upon which Plaintiff relied, and by failing to act, though they should have.  Defendants' conduct constitutes constructive fraud because Defendants breached legal and equitable duties and violated their fiduciary relationships.  Defendants committed actual fraud by misrepresenting material facts, on which Plaintiff and his health care providers acted.

16.

Defendants made misrepresentations by means including, but not limited to, advertisements, website statements, written and oral information provided to patients and

8

medical providers, marketing materials, clinical forms, and statements contained in product literature and trainings.

17.

Defendants intentionally and knowingly provided false product information. By providing the product and in the materials Plaintiff's providers received prior to his dialysis use in 2009, Defendants represented that their warnings, instructions, training, and product information were complete and accurate. Defendants represented that the product could be used as instructed when in fact the formulation required additional calculations and machine calibrations. Defendants misrepresented the proper use, character, and formulation of their product as well as its quality and safety. Defendants represented that their product had the same total buffer and effect as alternative available products. Defendants identified the bicarbonate level in their concentrates as lower than it in fact was.

18.

On the day Plaintiff received dialysis and before then, Defendants similarly misrepresented the true nature, character, safety, and proper uses of their product.

19.

Defendants marketed the product by claiming and representing GranuFlo® was "[s]afe for ...patients and staff' and that using dry sodium diacetate made "GranuFlo the safest dry acid product."

20.

Accurate facts were reasonably available to Defendants, even in the absence of knowledge of the falsity.

21.

Defendants' corporate and product marketing efforts misrepresented the true nature of the company and its product. Defendants' slogan, "patient centered care" misrepresented safety and diligence in the product's design and delivery. Defendants represented on their website and other mediums that they would "deliver the highest quality care with respect and compassion." Defendants represented on their website and via other mediums that they would "treat [Plaintiff] well-to help [him] feel better." Defendants represented on their website and via other mediums that they provided "technologically-advanced care." Even today, Defendants' website and product information continues to represent that GranuFlo® is safe for patients and staff and offers "superior clinical outcomes," despite the known risks and inadequate warnings and instructions.

22.

The product Plaintiff received was not safe, efficacious, adequately tested, of merchantable quality, properly formulated, of the nature and character described, or fit for dialysis use, as Defendants knew. Defendants were aware of the falsity of the representations they made, but acted with flagrant disregard and recklessness as to whether the truth or falsity might be inferred.

23.

The information Defendants misrepresented was material to Plaintiff's and his medical providers' decisions in using the product. Defendants intentionally made these material misrepresentations knowing they were false, deceptive, and misleading and they made them intending to defraud, deceive, and mislead. Defendants presented themselves as experts in the

field on their website and in marketing, sales, product, and clinical materials.  Plaintiff and his medical providers justifiably relied upon them and reasonably believed them to be true.  In justifiable reliance upon them, they were induced to prescribe and use Defendants' product. Had Defendants not made these express and implied false statements about the product, Plaintiff would not have used the product and his medical providers would not have administered it.

24.

Defendants' fraudulent representations evidence flagrant, willful, and depraved indifference to patient health, safety, and welfare.  Defendants' conduct showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care that raises the presumption of conscious indifference to consequences.

25.

As a direct and proximate result of Defendants' fraudulent misrepresentations and intentional concealment of facts, upon which Plaintiff reasonably relied, Plaintiff suffered injuries and damages as described with particularity herein.

OTHER COUNT III: FRAUDULENT CONCEALMENT

26.

The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein again.

27.

The Fresenius Defendants fraudulently concealed essential, life-and-death information with respect to GranuFlo® and NaturaLyte® by:

11

a.      failing to include warnings and/or adequate warnings of the increased risks of death and serious injury associated with using GranuFlo® and NaturaLyte®;

b.      failing to provide adequate and/or proper instructions regarding the proper use of GranuFlo® and NaturaLyte®;

c.      failing to provide adequate and/or proper instructions regarding monitoring dialysis patients before, during and after dialysis when GranuFlo® and NaturaLyte® were used;

d.      failing to inform Plaintiff that GranuFlo® and NaturaLyte® had not been adequately tested to determine the safety and risks associated with using the products;

e.      failing to inform Plaintiff and others of the dangers associated with GranuFlo® and NaturaLyte® in the products' labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and/or regulatory submissions;

f.      failing to inform Plaintiff of the risks associated with using GranuFlo® and NaturaLyte®;

g.      withholding and/or concealing and/or downplaying the information and/or evidence that the products were associated with an increased risk of serious injury and/or death;

h.      concealing through affirmative misrepresentations that GranuFlo® and NaturaLyte® were as safe, and/or safer than other similar products used in dialysis treatment;

i.      concealing information about the safety of GranuFlo® and NaturaLyte® including information that the products were not safer than alternative dialysis products available on the market;

12

j.    concealing from Plaintiff information, regarding the true safety and/or efficacy of the GranuFlo® and NaturaLyte®; and

k.    concealing from Plaintiff that the clinicians, nurses, and/or physicians were not adequately trained, instructed, credentialed, and prepared for proper use of all GranuFlo® and/or NaturaLyte® hemodialysis products in a manner that was safe and effective.

28.

Defendants had sole access to material facts concerning the dangers and unreasonable risks of GranuFlo® and NaturaLyte®.

29.

The concealment of information by Defendants about the substantial risks of serious injury and/or death associated with GranuFlo® and NaturaLyte® were intentional, and the representations made by Defendants were known by Defendants to be false.

30.

Defendants made the concealment of information and the misrepresentations about the products with the intent that doctors and patients, including Plaintiff, rely upon them.

31.

Plaintiff and many others, including other patients and non-defendant healthcare providers involved in providing dialysis treatments, detrimentally relied upon the misrepresentations and material omissions of the Defendants and were unaware of the substantial increased risk of serious injury and/or death associated with and/or caused by GranuFlo® and NaturaLyte®, which Defendants concealed from Plaintiff.

32.

Had Defendants not fraudulently concealed such information, GranuFlo® and/or NaturaLyte® would not have been used during the dialysis treatment provided to Plaintiff.

33.

As a direct and proximate consequence of Defendants' concealment and wrongful conduct described herein, Plaintiff suffered multiple heart attacks.

OTHER COUNT IV:  CIVIL CONSPIRACY

34.

The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein again.

35.

The Fresenius Defendants did conspire with each other and/or the John Doe Defendants and/or other non-defendant parties and individuals in the conception, planning, adoption, execution and concealment of the breaches and tortious conduct at issue in this suit. Said parties did act, and continue to act, in combination with one another as alleged in this Complaint.  The actions of the Defendants, John Doe Defendants and other parties and entities were taken for the purpose of accomplishing the tortious and unlawful purposes alleged herein and/or for the purpose of accomplishing other lawful purposes by the tortious and unlawful methods herein alleged above.

36.

The Plaintiff has been damaged as a result of the unlawful and tortious actions by said

Defendants and John Doe Defendants in combination with each other and other parties, and causes of action are hereby stated against the Defendants and John Doe Defendants for actual and punitive damages for civil conspiracy as a result thereof.

## OTHER COUNT V:  AIDING & ABETTING

37.

The Plaintiff incorporates, adopts by reference and realleges each and every allegation of this Complaint the same as though specifically set out herein again.

38.

The Fresenius Defendants and the John Doe Defendants and other parties and/or individuals gave substantial assistance or encouragement to Fresenius in the conception and creation of, in the implementation and execution of, and in the subsequent concealment and manipulation of the breaches and wrongful conduct alleged in this suit.  By such actions, the Defendants and John Doe Defendants did knowingly and intentionally give substantial advice and on-going assistance and encouragement to the conduct itself and/or the scheme of tortious conduct and/or to conceal the same from the Plaintiff.

39.

The Plaintiff hereby states a cause of action against the Defendants and John Doe Defendants for actual and punitive damages for aiding and abetting to the damage of Plaintiff.

**CERTIFICATE OF SERVICE**

I, Jesse Mitchell, III, attorney for Jeffrey Alex Meeks, hereby certify that a true and correct copy of the foregoing has been mailed to the below identified businesses via their attorney representative at the following address, according to case management order #7 in this MDL:

Fresenius Medical Care Holdings, Inc., Fresenius Medical Care North America, Inc., Fresenius USA, Inc., Fresenius USA Manufacturing, Inc., Fresenius USA Marketing, Inc., and Fresenius USA Sales, Inc. at

Brandt Zeigler
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119.

This the 2nd day of May, 2014.

By: _____

Jesse Mitchell, III (MS Bar No. 103020)

*Attorney for Plaintiff*

16