UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: FRESENIUS GRANUFLO/      )      MDL NO. 13-02428-DPW
NATURALYTE DIALYSATE            )
PRODUCTS LIABILITY LITIGATION   )

This Order Relates To:

JIM HOOD, ATTORNEY GENERAL      )      CIVIL ACTION NO.
OF THE STATE OF MISSISSIPPI,    )      14-12384-DPW
*ex rel.* THE STATE OF          )
MISSISSIPPI,                    )
                                )
                Plaintiffs,     )
                                )
                    v.          )
                                )
FRESENIUS MEDICAL CARE          )
HOLDINGS, INC. and FRESENIUS    )
USA, INC.,                      )
                                )
                Defendants.     )


MEMORANDUM AND ORDER
January 2, 2015

The Attorney General of Mississippi on behalf of the State

of Mississippi filed this action against Defendants Fresenius

Medical Care Holdings, Inc. and Fresenius USA, Inc.

(collectively "Fresenius") in the Chancery Court of DeSoto

County, Mississippi.

The case made its way to me in Boston following removal to

the United States District Court for the Northern District of

Mississippi and then through transfer by the Judicial Panel for

Multidistrict Litigation under the rubric: In re *Fresenius*

*Granuflo/Naturalyte Dialysate Products Liability Litigation*, (JPML No. 2428). The Attorney General seeks to have me return the matter to DeSoto County. I conclude that the presence of the State of Mississippi as a real party in interest in a case founded solely on diversity jurisdiction requires me to do so.

The Complaint contains a single count alleging that Fresenius engaged in unfair or deceptive trade practices in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.* ("MCPA"), by providing "false product information" and misrepresenting or concealing the risks associated with its GranuFlo and NaturaLyte dialysis products. (Compl. ¶¶ 32-43.) According to the Complaint, Fresenius violated the MCPA "each time false or misleading product information was provided to a Mississippian, including the State, via a warning, instruction, training, advertisement or other product information." (*Id.* ¶ 41.) Through the Complaint, the Attorney General seeks injunctive relief, "disgorgement of all money wrongfully acquired by [Fresenius] from the sale of GranuFlo and NaturaLyte administered to Mississippi Medicaid recipients and members of the State Health Plan," civil penalties of "up to $10,000 for each violation of the [MCPA]," punitive damages, and attorneys' fees. (*Id.* ¶ 51.) According to the Complaint, the monies to be disgorged represent payments

made by the State of Mississippi "through its Division of Medicaid and the State Health Plan." (*Id.* ¶ 51(d).)

Fresenius removed the action to the United States District Court for the Northern District of Mississippi pursuant to 28 U.S.C. §§ 1441 and 1446, alleging diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  The State immediately moved to remand the case to Mississippi state court – and for costs and fees – but on Fresenius's motion, the Mississippi federal court issued a stay pending consideration of transfer of the case by the JPML to this Court as part of the *Fresenius GranuFlo/NaturaLyte Dialysate Products Liability Litigation.*

The case having been transferred to me by the JPML, I now consider the State's Renewed Motion to Remand and For Costs and Fees.

## I. THE LACK OF CITIZENSHIP FOR STATES UNDER FEDERAL DIVERSITY JURISDICTION

The only basis for removal asserted by Fresenius is diversity of citizenship under 28 U.S.C. § 1332(a)(1).[1]  There can be no dispute that the exercise of diversity jurisdiction pursuant to § 1332(a) requires complete diversity between the parties to a lawsuit.  "[T]hat is, diversity jurisdiction does

---

[1] Section 1332(a)(1) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . between citizens of different States."

not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co.* v. *Kroger*, 437 U.S. 365, 374 (1978) (emphases in original). It is equally well established that "a State is not a 'citizen' for purposes of diversity jurisdiction." *Moor* v. *Alameda County*, 411 U.S. 693, 717 (1973).

The Supreme Court has made clear that "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n* v. *Lee*, 446 U.S. 458, 461 (1980). This rule applies with equal force where, as here, a State or state official is a named party to an action. *See Mississippi* ex rel. Hood v. *AU* Optronics, 134 S. Ct. 726, 745 (2014) (citing *Missouri, K & T. R. Co.* v. *Missouri Railroad and Warehouse Comm'rs*, 183 U.S. 53, 58-59 (1901)). Accordingly, in determining whether jurisdiction is proper I must "disregard nominal or formal parties and rest only upon the citizenship of the real parties to the controversy." *Navarro*, 446 U.S. at 461.[2]

---

[2] Contrary to what the State of Mississippi appears to suggest in its submission, the recent decision of the Supreme Court last term in *Mississippi* ex rel*. Hood* v. *AU Optronics Corp.*, 134 S. Ct. 736 (2014), did not disturb the proposition that in determining diversity of citizenship under § 1332(a), a court must look to the citizenship of the real parties in interest. Rather, the Court in *AU Optronics* held that Congress did not intend to import the real party in interest protocols from the Court's diversity jurisdiction jurisprudence into the mass action provision of the Class Action Fairness Act of 2005

Fresenius concedes that the State of Mississippi is a real party in interest to this action, insofar as the Mississippi Attorney General is authorized to bring *parens patriae* actions to vindicate the State's "quasi-sovereign interest in the health and well-being — both physical and economic — of its residents in general." *See Alfred L. Snapp & Son* v. *Puerto Rico, ex rel. Barez*, 458 U.S. 592, 607 (1982); *Louisiana ex rel. Caldwell* v. *Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008) (holding State of Louisiana was real party in interest to claims for injunctive relief under Louisiana's antitrust statute); *Hood* v. *AstraZeneca Pharma., LP*, 744 F. Supp. 2d 590, 596 (N.D. Miss. 2010) (concluding State of Mississippi was a real party in interest to claims under MCPA, state Medicaid laws, and causes of action in tort); *Hood* v. *F. Hoffman-La Roche, Ltd.,* 639 F. Supp. 2d 25, 32-33 (D.D.C. 2009) (concluding State of Mississippi was real party in interest as to forfeiture and penalty claims under state antitrust act); *Hood* v. *Bristol-Myers Squibb Co.*, 2013 WL 3280267 at *5-7 (N.D. Miss. June 27, 2013) (concluding that State of Mississippi was a real party in interest to claims under MCPA).

---

("CAFA"). *Id.* at 742, 745. Fresenius does not allege CAFA jurisdiction in this case; consequently, *AU Optronics* is not directly on point for present purposes. Nevertheless, the careful analysis of *AU Optronics* provides a recent example of the need for balancing the several interests at issue when considering the use of diversity jurisdiction for aggregate litigation in the federal courts.

Fresenius contends, however, that despite the State's status as the only *named* plaintiff, the State of Mississippi is not the only *real* plaintiff in interest to this action. Other real plaintiffs in interest, according to Fresenius, include the Mississippi State Division of Medicaid, on whose behalf the State seeks disgorgement, as well as individual, unnamed citizens of Mississippi whose injuries this suit aims to redress. *See Louisiana ex rel. Caldwell* 536 F.3d at 430-31 (concluding individual insurance policyholders who suffered injuries were real parties in interest to claim for treble damages under state antitrust statute); *Hood* v. *F. Hoffman-La Roche, Ltd.,* 639 F. Supp. 2d at 32-33 (concluding Mississippi citizens were real parties in interest to claims for compensatory damages under state antitrust statute); *Hood* v. *Bristol-Myers Squibb Co.,* 2013 WL 3280267 at *5-7 (concluding individual consumers were real parties in interest to certain damages claims under MCPA).

More specifically, Fresenius further contends that the Division of Medicaid is not an "arm or alter ego of the State," but a sufficiently autonomous entity that for the purposes of diversity jurisdiction should be considered a citizen of Mississippi. *See Moor*, 411 U.S. at 717; *University of Rhode Island* v. *A.W. Chesterton Co.*, 2 F.3d 1200, 1202 (1st Cir. 1993) (holding "a political subdivision possessing the formal status

of a 'body politic and corporate,' such as a county or
municipality, is presumed a 'citizen' for diversity purposes
unless it is simply the arm or *alter ego* of the State.").

Assuming, *arguendo*, that the Division of Medicaid is not
merely an arm or alter ego of the State but rather a separate
party with Mississippi citizenship, the suit would then consist
of Mississippi citizen consumer beneficiaries, an institutional
Mississippi citizen (the Division of Medicaid) and a stateless
person (the State of Mississippi) versus a citizen of a state
other than Mississippi (Fresenius).[3]  In Fresenius's view,

---

[3] Determining under First Circuit law whether a State-related
entity like the Division of Medicaid is merely an "arm or alter
ego" of the State — and thus a "stateless" person for diversity
purposes — or sufficiently independent and autonomous to be
considered a citizen for diversity purposes, is a complex,
highly-individualized and fact-dependent inquiry.  *See A.W.
Chesterton*, 2 F.3d at 1204-05 (setting forth non-exhaustive
eight-factor test for determining alter-ego status, borrowed
from Eleventh Amendment sovereign immunity analysis).  However,
because I conclude that the State's presence as a real party in
interest destroys diversity jurisdiction regardless of whether
another diverse party is joined as a plaintiff, I need not
determine under the exhausting First Circuit protocol whether
the Division of Medicaid should be treated as an *additional*
party separate and apart from the State.  In this connection, I
note further that having had occasion to undertake "arm of the
state" inquiries under *Chesterton* and the more recent directions
of *Fresenius Medical Care Cardiovascular Resources, Inc*. v.
*Puerto Rico and the Caribbean Cardiovascular Center Corp*., 322
F.3d 56 (1st Cir. 2003), *see, e.g., Gallo* v. *Essex County
Sherriff's Department*, 2011 WL 1155385 (D. Mass. 2011), share
the views expressed by Judge Hornby in his concurring opinion in
*Chesterton* lamenting "such a complex analysis."  2 F.3d at 1219,
1220.  I also endorse Justice Breyer's aspirational observation
that "when judges decide jurisdictional matters, simplicity is a
virtue."  *Standard Fire Insurance Co.* v. *Knowles*, 133 S. Ct

"[t]here is diversity here, because the State of Mississippi has

no citizenship to consider . . . and the Division of Medicaid, a

real party in interest, is a citizen of Mississippi and thus

diverse from Fresenius."  Fresenius contends that "where a State

is not the *only* real party in interest on its side of the 'v.',

its mere presence in the case does not automatically destroy

diversity; rather, in determining diversity, the Court should

disregard the State and consider the citizenship of any other

real parties in interest."  The State disagrees, contending that

a State's mere presence as a real party in interest destroys

diversity jurisdiction regardless of the presence of other

diverse parties.  Finding that upon this issue "a page of

history is worth a volume of logic," *New York Trust Co.* v.

*Eisner*, 256 U.S. 345, 349 (1921), I conclude the State's

position is the correct one.

While there may be a certain logic to the proposition that

a State's lack of citizenship could be disregarded or treated as

a nullity when the remaining parties to an action are completely

diverse, the weight of authority compels the opposite result.

As a matter of history, parties without any state citizenship,

such as States, Indian tribes, or Americans domiciled abroad,

have been treated as "jurisdictional spoilers" whose mere

---

1345, 1350 (2013).  Whether such laments will lead to the
realization of such aspirations cannot be demonstrated in this
case.

presence in an action destroys complete diversity.  *See Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *Ninigret Develop. Corp.* v. *Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 27 (1st Cir. 2000).

The reason why a State — unless it is a nominal party only — cannot simply be disregarded for diversity jurisdiction purposes is because no congressional grant of federal jurisdiction extends to diversity suits in which a State is a party.  Instead, the development of 28 U.S.C. § 1332(a)(1), pursuant to which Fresenius removed this suit, makes clear the statute requires that all parties be "citizens" of some state and because a state has no citizenship, it cannot possibly be party to a diversity action unless it is a party in name only.

Although the principle that a State is not a citizen of itself for the purposes of diversity jurisdiction was regarded by the Supreme Court as "well settled" as early as 1894, *see Postal Telegraph Cable Co.* v. *Alabama*, 155 U.S. 482, 487 (1894) ("under the judiciary acts of the United States it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states, and that the circuit court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States"), little

has been written since then concerning the historical origins of that principle.

The principle had found expression, a few years before *Postal Telegraph Cable* was handed down, in *Stone* v. *South Carolina*, 117 U.S. 430 (1886), where the Supreme Court observed "[t]here is no statute which authorizes the removal of a suit between a state and citizens on the grounds of citizenship, for a state cannot, in the nature of things, be a citizen of any state." *Id.* at 433. The origins were fully explored two years earlier in *Ames* v. *Kansas*, 111 U.S. 449 (1884), in which the Supreme Court was called upon to interpret the Jurisdiction and Removal Act of 1875, 18 Stat. 470, which created federal question jurisdiction.

As the Court in *Ames* explained, when the First Congress passed the Judiciary Act of 1789, it conferred upon the Supreme Court original but nonexclusive jurisdiction over suits "between a state and citizens of other states." In the Court's view,

> *No jurisdiction was given in such cases to any other court of the United States*, and the practical effect of the enactment was therefore to give the supreme court exclusive original jurisdiction in suits against a state begun without its consent, and to allow the state to sue for itself in any tribunal that could entertain its case. In this way states, ambassadors, and public ministers were protected from the compulsory process of any court other than one suited to their high positions, but were left free to seek redress for their own grievances in any court that had the requisite jurisdiction. No limits were set on their powers of choice in this particular.

*Id.* at 465 (emphasis added). In other words, "[t]he evident

purpose was to open and keep open the highest court of the

nation for the determination . . . of suits involving a state

. . . but [not] to compel a state to resort to this one

tribunal for the redress of all its grievances." *Id.* at 402.[4]

It was against this historical background that Congress

enacted the Jurisdiction and Removal Act of 1875. That statute,

a precursor to 28 U.S.C. § 1331, provided for the removal by

either party from a State court to "the circuit court of the

United States for the proper district . . . any suit of a civil

nature . . . brought in any state court, . . . arising under the

constitution or laws of the United States." *Ames*, 111 U.S. at

_____

[4] The Supreme Court maintains original jurisdiction in diversity
cases involving suits between a state and citizens of another
state. That Court, however, has retained discretion to decline
to exercise jurisdiction over cases between a state and citizens
of another state. It will do so when exercising jurisdiction
would disserve the principles underlying the Article III grant
of jurisdiction and would interfere with the Supreme Court's
other responsibilities. *Ohio* v. *Wyandotte Chemicals Corp*, 401
U.S. 493, 499 (1971). The principles underlying original
jurisdiction in these cases rest on concerns that when a state
is forced to sue in a court located in another state, "parochial
factors might often lead to the appearance, if not the reality,
of partiality to one's own." *Id.* at 500. If so, the Supreme
Court would be the only viable alternative forum that could hear
the case. *Id.* Under modern principles of personal
jurisdiction, however, state courts of the state bringing suit
will generally have personal jurisdiction over the out-of-state
defendant, thereby negating the concerns forming the basis for
the grant of original jurisdiction and providing grounds on
which the Supreme Court may choose to exercise its discretion
not to hear such cases. *See, e.g., id.* at 500.

402-03.  Because the "statute itself [made] no exception of suits to which a state is a party," the Court reasoned, suits arising under federal law could be removed even if a State was a party to the action.  *Id.* at 403.

Critically, however, because the previously existing rule provided that a State could not be compelled to litigate a suit against citizens of another state in the lower federal courts, the Supreme Court has interpreted the Jurisdiction and Removal Act of 1875 as abrogating that rule only with respect to suits arising under federal law.  With respect to cases in which no federal question is raised, a State maintains the absolute right to sue in its own courts.  *See Stone* v. *South Carolina*, 117 U.S. at 433 (stating "[t]here is no statute which authorizes the removal of a suit between a state and citizens on the grounds of citizenship," and noting that removal was proper in *Ames* "because of the subject-matter of the action, and not because of the citizenship of the parties."); *Germania Ins. Co.* v. *Wisconsin*, 119 U.S. 473, 475 (1886) (citing *Ames* for the proposition that "[a] suit by a state in one of its own courts cannot be removed to a circuit court of the United States, under the act of 1875, unless it be a suit arising under the constitution or laws of the United States . . . . ."); *Postal Telegraph Cable Co.*, 155 U.S. at 487 (citing *Ames* for the propositions that "[a] state is not a citizen" and that a suit

to which a State is a party is not removable on the basis of
citizenship).

As did the Jurisdiction and Removal Act of 1875, the
current statute pursuant to which the district courts maintain
jurisdiction over suits arising under federal law provides that
"[t]he district courts shall have original jurisdiction of *all*
civil actions arising under the Constitution, laws, or treaties
of the United States."  28 U.S.C. § 1331 (emphasis added).  And
as with the 1875 Act, it makes no exception for cases to which a
State is a party, the result being that cases arising under
federal law to which a State is a party are removable like any
other.  *Id.*

The modern diversity jurisdiction statute, 28 U.S.C. §
1332(a), by contrast, provides as follows:

> The district courts shall have original jurisdiction
> of all civil actions where the matter in controversy
> exceeds the sum or value of $75,000, exclusive of
> interest and costs, and is between—
>> (1) citizens of different States;
>> (2) citizens of a State and citizens or subjects of a
>>     foreign state . . . ;
>> (3) citizens of different States and in which citizens
>>     or subjects of a foreign state are additional
>>     parties; and
>> (4) a foreign state . . . as plaintiff and citizens of
>>     a State or of different States.

28 U.S.C. § 1332(a).  The plain language of the relevant
subsection, § 1332(a)(1), affirmatively grants to the district
courts jurisdiction over suits between "citizens of different

States."  The remaining subsections of § 1332(a) then provide
for jurisdiction between citizens of States and other special
parties that do not possess any state citizenship.  Notably
§ 1332(a) does *not* provide a grant of jurisdiction for suits to
which a non-citizen State is a party.  As one court has
observed, "[c]learly, Congress contemplated the situation of
non-citizens and specifically allowed for suits by those non-
citizens it thought appropriate.  The obvious conclusion is that
Congress did not intend the states of the United States to be
amenable to diversity jurisdiction in the federal courts."
*Batton* v. *Georgia Gulf*, 261 F. Supp. 2d 575, 582 (M.D. La.
2003).

     The First Circuit has consistently recognized that because
"federal courts are courts of limited jurisdiction, they can act
only where the Constitution and Congress endow them with some
affirmative ground to do so."  *U.S.I. Props. Corp.* v. *M.D.
Constr. Co.*, 230 F.3d 489, 499 (1st Cir. 2000) (internal
citation omitted).  It is in this context that the First Circuit
has made clear that, "[i]n particular, Congress has not
empowered the federal courts to exercise diversity jurisdiction
over the states.  By the express terms of the statute, the

diversity jurisdiction does not ever extend to the states . . .

.″[5]  *Id.*  Other recent decisions of the First Circuit similarly recognize that the presence of a stateless party defeats diversity jurisdiction notwithstanding that the remaining parties are completely diverse.  *See D.B. Zwirn Special Opportunities Fund, L.P.* v. *Mehrotra*, 661 F.3d 124, 126 (1st Cir. 2011) (per curiam) (holding that, because the citizenship of a limited liability company is determined by the citizenship of all of its members, if any member of the plaintiff LLC was "a stateless person, or an entity treated like a stateless person," the court would lack diversity jurisdiction; noting by analogy that "states are not 'citizens' for purposes of the diversity statute."); *Ninigret Develop. Corp.*, 207 F.3d at 26-27 (holding lack of diversity jurisdiction where private developer sued Indian tribal authority and private diverse corporation in federal court because "notwithstanding the joinder of other diverse parties, the presence of an Indian tribe [a stateless entity] destroys complete diversity.").  Accordingly, with §

---

[5] It is in part for this reason that Fresenius's reliance on *Exxon Mobil Corp.* v. *Allapattah Servs., Inc.*, 545 U.S. 546 (2005), is misplaced.  Not only is *Allapattah* distinguishable in that it concerned the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 over parties not individually meeting the amount in controversy requirement, but the practical considerations embraced by the Supreme Court in the circumstances of that case plainly must yield to the statutory requirement under § 1332 that all parties be citizens of some state.  Nothing in *Allapattah* suggests otherwise.

1332 diversity jurisdiction as the only asserted basis for
removal in this case, this court lacks subject matter
jurisdiction.

Most courts elsewhere have concluded unequivocally that a
State's mere presence in a suit as a real party in interest
defeats diversity jurisdiction regardless of the presence of
other completely diverse parties.[6]

---

[6] I acknowledge Fresenius's citation to several cases, including
one decided in this district by my late colleague Judge
McNaught, which appear to support the proposition that a State's
lack of citizenship is simply disregarded when the remaining
parties to a suit are completely diverse. *See, e.g.*, *Hussain* v.
*Boston Old Colony Ins. Co.*. 311 F.3d 626, 635 n.46 (5th Cir.
2002); *Grammer* v. *Melnik*, 2008 WL 501251, *3 (D.V.I. Feb. 14,
2008); *Laird* v. *Chrysler Corp.*, 92 F.R.D. 473, 475 (D. Mass.
1981); *United Pacific Ins. Co.* v. *Capital Develop. Bd.*, 482 F.
Supp. 541, 546 (N.D. Ill. 1979). Judge McNaught's opinion in
*Laird* conflicts with subsequent precedents of the First Circuit
concerning the impact on diversity jurisdiction of stateless
parties, *see D.B. Zwirn Special Opportunities Fund, L.P.* v.
*Mehrotra*, 661 F.3d 124, 126 (1st Cir. 2011) (per curiam); *U.S.I.
Props. Corp.* v. *M.D. Constr. Co.*, 230 F.3d 488, 499 (1st Cir.
2000); *Ninigret Develop. Corp.* v. *Narragansett Indian Wetuomuck
Hous. Auth.*, 207 F.3d at 21, 26-27 (1st Cir. 2000). *Laird* also
relies on the reasoning of the Northern District of Illinois in
*United Pacific Ins. Co.*, with which I disagree insofar as it
appears to misinterpret the Supreme Court's statement in *Owen
Equip. & Erection Co.* v. *Kroger*, 437 U.S. 365 (1978), that
"diversity jurisdiction does not exist unless *each* defendant is
a citizen of a different state from *each* plaintiff" *id*. at 373
(emphasis in original) to suggest the state itself is a citizen.
Further, the suggestion in *Hussain* that jurisdiction would be
proper under § 1332 was made in unanalyzed dicta, after the
court had already concluded that federal subject matter
jurisdiction over that case existed pursuant to 28 U.S.C. §
1444, which governs foreclosure actions against the United
States. *See Hussain*, 311 F.3d at 635 n.46. A similar statement
in *Grammer* that "it cannot be said that [the Government of the
Virgin Islands] is a citizen of the Virgin Islands for purposes

16

In *Louisiana* v. *Union Oil Co. of California*, 458 F.3d 364 (5th Cir. 2006), the Fifth Circuit ordered an action remanded to state court where the State of Louisiana, as a real party in interest, joined a local school board in bringing suit against diverse defendants because "the State of Louisiana is a real party in interest in this suit, the presence of which defeats diversity jurisdiction." *Id.* at 367.

Likewise, in a case bearing a striking similarity to the present action, Judge Hogan of the United States District Court for the District of Columbia remanded to state court an action in which the real parties in interest were: "(1) the State of Mississippi acting as *parens patriae* and represented by the Mississippi Attorney General, . . . (2) Mississippi citizens who, collectively, are the real party in interest for claims seeking compensatory damages under the Mississippi Antitrust Act and (3) the defendants, who are citizens of states other than Mississippi." *Hood* v. *Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d at 33. In *Hoffman-La Roche*, Judge Hogan observed that the only exception to the rule that a State's presence as a party destroys diversity jurisdiction is where the State's role in the action is as a nominal party *only*. *See id.* at 33.

---

of defeating diversity jurisdiction," 2008 WL 501251 at *3, appears to be a confused exercise in *ipse dixit*.

Other courts to have explicitly considered the question now before me have reached the same result. *See Hood* v. *AstraZeneca Pharma, LP*, 744 F. Supp. 2d at 595, 598 (remanding to state court action brought by the State of Mississippi, despite explicitly assuming that a public employee benefit plan with Mississippi citizenship was also a real party to the action, because the "the existence of the State of Mississippi as a real party in interest to this action destroys subject matter jurisdiction pursuant to Section 1332."); *Batton* v. *Georgia Gulf*, 261 F. Supp. 2d at 581 (observing in a case where the State of Louisiana was but one of many, otherwise diverse defendants: "The question is whether having one defendant with no citizenship destroys diversity jurisdiction. The Magistrate Judge concluded that it does and the court agrees.").

Finally, the Supreme Court summed matters up concisely this year — albeit in dicta, but dicta that is essentially binding[7] — with the observation that "a State's presence as *a* party will demolish complete diversity." *AU Optronics*, 134 S. Ct. at 745. Vagrant suggestions to the contrary, *see supra* note 5, in the

---

[7] Dicta from the Supreme Court is entitled to special consideration even if the language does not directly govern the disposition of the case. *McCoy* v. *Massachusetts Institute of Technology*, 950 F.2d 13, 19 (1st Cir. 1991) (federal courts "are bound by the Supreme Court's considered dicta almost as firmly as by the court's outright holdings, particularly when, as here, dictum is of recent vintage").

case law of the lower federal courts are neither binding nor
persuasive.

## II. COSTS AND FEES FOR REMOVAL

Arguing that *AU Optronics* definitively held that the
presence of a state in diversity litigation destroys diversity,
the Attorney General seeks fees and costs from Fresenius for
removing this case without an objectively reasonable basis for
doing so.  As I have noted, however, the language of *AU
Optronics* is dicta, *see supra* note 7, although no less
persuasive - and potentially binding - for being such.
Moreover, the historical explorations of this Memorandum and
Order demonstrate that the dicta from *AU Optronics* that "a
State's presence as a party will demolish complete diversity,"
134 S.Ct. at 745, expresses a long-established principle
reflected in multiple Supreme Court and reasoned lower court
holdings over the years.

Nevertheless, there is at least one contrary holding by a
judge of this court among a smattering of inadequately reasoned
lower court rulings, *see supra* note 6, to support the position
that Fresenius has taken here.  And while the First Circuit,
albeit in cases not precisely on point, has since made clear
that the real party status of certain entities for which
diversity jurisdiction is not expressly granted will destroy
diversity jurisdiction, *see supra* pp. 13-14, the cases to the

19

contrary have not been expressly overruled or called into question by name.

Although I am strongly of the view the federal courts must rigorously police removal practice, *cf. Harvard Real Estate-Allston, Inc.* v. *KMART Corp.*, 407 F. Supp. 2d 317 (D. Mass. 2005), and view this as a close question here, I conclude that the defendants were not without grounds to challenge remand in this case. Accordingly, I decline to order Fees and Costs to the plaintiff.

### III. APPELLATE REVIEW OF REMAND

Hopeful that the lessons of history — as embodied in essentially consistent case law treating the presence of a State as a jurisdiction-destroyer in federal diversity cases — can somehow be untaught by further litigation of the issue in the federal courts, Fresenius has anticipatorily requested the opportunity to test my adverse decision through interlocutory review pursuant to 28 U.S.C. § 1292(b). Fresenius seeks this procedural initiative because Congress has directed that in ordinary course, a decision to remand is not subject to review "on appeal or otherwise." 28 U.S.C. § 1447(d). My decision to remand, resting, as it does, "on lack of subject matter jurisdiction

. . . is not reviewable by appeal or mandamus, even if
erroneous." *Gonzalez-Garcia* v. *Williamson Dickie Mfg. Co.*, 99
F.3d 490, 491 (1st Cir. 1996).[8]

I have observed that "[c]ertifications under § 1292(b) are
not looked upon with favor by the First Circuit"; indeed, I
approach Fresenius's request by again observing that in nearly
three decades as a District Judge, "I cannot recall an occasion
in which I have been willing to make a § 1292(b) certification,"
other than in the case where I first made that observation.
*Lawson v. FMR LLC*, 724 F.Supp.2d 167, 168 (D. Mass. 2010).  The
singularity of that one occasion is underscored by the
subsequent history of that case.  It initially led to a reversal
by the First Circuit of my denial of an otherwise unappealable
motion to dismiss.  *Lawson* v. *FMR LLC*, 670 F.3d 61 (1st Cir.
2012).  The Supreme Court, acting unusually in the absence of a
split among the Circuits, then granted certiorari and reversed
the First Circuit, reinstating my initial decision.  *Lawson* v.
*FMR LLC*, 134 S.Ct. 1158 (2014).

This case does not begin to approximate the "hens-teeth
rare" qualities of *Lawson*; the legal issues, while just

---

[8] The absolute bar on appeal of an order of remand in the absence
of certification under 28 U.S.C. § 1292(b) is to be
distinguished from the separate mechanism for discretionary
appellate review of a remand order in a class action under the
Class Action Fairness Act of 2005, 28 U.S.C. § 1453(c)(1).  *See
generally, Dart Cherokee Basin Operating Co.* v. *Owens*, 2014 WL
7010692, *8-9 (U.S. Dec. 15, 2015).

colorable enough to protect Fresenius from being found obligated to pay attorneys fees and costs under § 1447(d), *see supra* Section II, are plainly not open to substantial dispute. The principle is long settled; in the words Fresenius has used to pose it, "a state's mere presence in a lawsuit as a real party in interest, even among other diverse parties, always and automatically destroy[s] diversity jurisdiction." Congress, as a matter of general policy, has declined to facilitate review of orders to remand. Section § 1292(b) should not be used in this case for relief from that federal policy.[9]

## IV. CONCLUSION

I conclude that the presence of the State of Mississippi as a real party in interest to this action destroys complete diversity and deprives this court of subject matter jurisdiction. Accordingly, I GRANT the motion of the state of Mississippi for remand of this case to the Chancery Court of DeSoto County, Mississippi. Because suggestions of a contrary resolution have not been expressly overruled, however, I DENY the Attorney General's motion for fees and costs against Fresenius for contesting the issue before me. I DECLINE

---

[9] I note that it does not appear that the propriety of this remand will be subject to review in the state court either since the purported availability of jurisdiction in the federal court, as argued here by Fresenius, is immaterial to the exercise of independently available jurisdiction in the Mississippi state courts.

Fresenius's request that I certify an interlocutory appeal of my

remand of the case.



                                           ***/s/ Douglas P. Woodlock***
                                           DOUGLAS P. WOODLOCK
                                           UNITED STATES DISTRICT JUDGE