UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: FRESENIUS GRANUFLO/    )    MDL NO. 13-02428-DPW
NATURALYTE DIALYSATE          )
PRODUCTS LIABILITY LITIGATION )
                             )

This Order Relates To:

Cases filed in California    )
state court in which        )
FRESENIUS, U.S.A., BEN LIPPS, )
and/or WALTER WEISMAN have   )
been named as Defendants,[1]   )

MEMORANDUM AND ORDER
January 2, 2015

A number of Plaintiffs whose cases have been transferred to this Court by the Judicial Panel for Multidistrict Litigation seek remand of their cases to the California state courts, where they had originally filed their complaints.

Defendants removed these cases from state court to federal court pursuant to 28 U.S.C. 1441(a) on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Defendants' removal of these cases was predicated on three factual assertions creating diversity: (1) Defendant Fresenius USA is a citizen of Massachusetts, rather than California, as alleged by

---

[1] The specific list of cases in which relevant motions were formally made is attached to this Memorandum and Order as APPENDIX A. In the absence of some further pleadings, these rulings are presumptively applicable to other cases raising the same questions. However, formal motions must be filed as to such other cases in order to obtain definitive rulings in those matters.

1

the Plaintiffs; (2) Defendant Ben Lipps has been a citizen of Massachusetts and Nevada during the relevant time periods, but again, not a citizen of California; and (3) Defendant Walter Weisman, who is a citizen of California, was fraudulently joined as a defendant in these action.

If Defendants' contentions are correct, complete diversity exists between Defendants and Plaintiffs, who are citizens of California.  As a consequence, this Court would properly have jurisdiction over the instant cases in diversity.  28 U.S.C. § 1332.  If any properly joined defendants are citizens of California, however, removal to this Court would be unavailable on two grounds: first, by the absence of diversity jurisdiction, and second by the forum defendant rule, codified as 28 U.S.C. § 1441(b)(2).  For the reasons discussed below, I find that remand is unwarranted because the diversity requirement is satisfied here.  In so doing, I find that Mr. Weisman was fraudulently joined and accordingly will grant his motions to dismiss.[2]

## I. LEGAL STANDARD FOR REMOVAL

A defendant has a limited statutory right to remove a case filed in state court to federal court.  *See* 28 U.S.C. §§ 1441, 1446.  At a minimum, the federal court must have original

---

[2]  The motions are duplicative, apparently the second (#474) was filed to supply case numbers missing from the first (#455).

jurisdiction over the action, and the defendant must comply with a variety of procedural requirements. *See id.*; *Samaan* v. *St. Joseph Hosp.*, 670 F.3d 21, 27 (1st Cir. 2012). A federal district court has original jurisdiction over civil actions between citizens of different states in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Diversity must be complete — that is, the citizenship of each plaintiff must be different from that of each defendant. *Toste Farm Corp.* v. *Hadbury, Inc.*, 70 F.3d 640, 642 (1st Cir. 1995).

Although a defendant may generally remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), a civil action otherwise removable solely on the basis of the diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). In other words, if any properly joined defendant here is a citizen of California, removal to federal court is not permitted. This is known as the forum defendant rule. Thus, lack of diversity or the presence of an in-forum defendant produce the same result of requiring remand due to improper removal.

As the removing parties, Defendants bear the burden of establishing federal jurisdiction. *In re Pharm. Indus. Average Wholesale Price Litig.*, 431 F. Supp. 2d 109, 116 (D. Mass. 2006); *see Hertz Corp.* v. *Friend*, 559 U.S. 77, 96 (2010). The removal statute is strictly construed, and any doubts about the propriety of removal are resolved in favor of remand to the state forum.[3] *Pharm. Indus.*, 431 F. Supp. 2d at 116; *see* 28 U.S.C. § 1447.

## II. THE CITIZENSHIP OF FRESENIUS USA

### A. *Background and Legal Standard*[4]

For diversity purposes, a corporation is deemed to be a citizen of both the state where it is incorporated and the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). Citizenship is determined as of the date of the commencement of the lawsuit; here, the first of these complaints was filed in July 2013, and all others in either the remainder of 2013 or 2014. *See Toste Farm Corp.* v. *Hadbury, Inc.*, 70 F.3d 640, 642 (1st Cir. 1995). Fresenius USA is and at all relevant times has been incorporated in Massachusetts. The parties disagree, however, about whether the principal place of

---

[3] In this respect, "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing." *Burns* v. *Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

[4] I note that questions of law in MDL-transferred cases are governed by the law of the transferee court. *See In re New Eng. Mut. Life Ins. Company Sales Practices Litig.*, 324 F. Supp. 2d 288, 297 (D. Mass. 2004).

business of Fresenius USA is located in Massachusetts, as Defendants contend, or in California, as Plaintiffs argue.

In *Hertz*, 559 U.S. at 92-93, the Supreme Court held that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities" — "the corporation's 'nerve center.'" The court recognized that in practice this will "normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Id.*

**B.    *The Principal Place of Business of Fresenius USA***

Defendants have presented sufficient evidence that Fresenius USA's principal place of business is in Waltham, Massachusetts. Ben Lipps, the founder and first chief executive officer (CEO) of Fresenius USA who served as the Rule 30(b)(6) deponent, credibly stated the following facts. Fresenius USA was headquartered in California until 1996, when it merged with National Medical Care, a larger company located in Massachusetts. After that merger, some manufacturing activity and equipment remained in California, but headquarter functions of Fresenius USA and other Fresenius entities, including the

office of the chief executive and the legal and accounting functions, were moved to Massachusetts. Mr. Lipps, as the CEO of the newly formed company, also moved to Massachusetts.

Mark Costanzo, the President of the Renal Therapies Group of Fresenius Medical Care North America and the President of Fresenius USA, whose office is located in Waltham, corroborated these facts in his affidavit. He explained that the manufacturing facility in Walnut Creek, California is one of several such facilities owned by Fresenius USA across the United States. Mr. Costanzo further stated that "[a]ll significant corporate decisions for the Walnut Creek operation and Fresenius USA, Inc. are subject to review and approval by managers and corporate officers . . . all of whom have their offices in Waltham, Massachusetts."

As the statements of Mr. Lipps and Mr. Costanzo make clear, only certain limited operational activities remain in California. The direction and management of those activities, however, occurs in Massachusetts. This makes Massachusetts the "nerve center" and therefore the location of the "principal place of business" of Fresenius USA. *See Hertz*, 559 U.S. at 92-93.

**C.    *Fresenius USA's Contrary Statements Regarding Its Principal Place of Business***

Plaintiffs do not appear to dispute any of these facts establishing Fresenius USA's corporate headquarters in Massachusetts[5] but instead point to repeated contrary admissions, representations, and statements in court filings by Fresenius USA that its principal place of business is in California.  The import of the evidence of record before me regarding Fresenius USA's principal place of business is complicated by these statements, some made as recently as 2012.  Plaintiffs contend that Fresenius USA should be judicially estopped from contradicting these prior statements and now contending that its principal place of business is in Massachusetts.

1.  Prior Statements

Most of Fresenius USA's statements that its principal place of business was in California appeared in court filings prior to 2010.  For example, in a complaint filed by Fresenius USA on April 4, 2001, Fresenius USA alleged that "Plaintiff Fresenius USA, Inc. . . . is, and at all times herein mentioned was, a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of

_____

[5] To the extent Plaintiffs contend that because significant manufacturing and distribution activity occurs in California, such activity establishes that the "nerve center" of Fresenius USA is located in California, I reject that proposition.

business in Walnut Creek, Contra Costa County, California.

[Fresenius USA] is qualified to do business in California and

has a research and manufacturing facility in Walnut Creek,

California." Similarly, in a filing on November 11, 2006,

Fresenius admitted that it "is a Massachusetts Corporation with

its principal place of business in Walnut Creek, California."

Fresenius USA also made such representations in two filings

in 2012 — after the Supreme Court clarified the definition of

"principal place of business" in *Hertz*. On September 20, 2012,

Fresenius USA submitted its answer to a complaint filed in the

District Court for the Northern District of Illinois and

admitted that "Fresenius USA, Inc. is a Massachusetts

corporation with its principal place of business in Walnut

Creek, California." *See Baxter, Int'l, Inc.* v. *Fresenius Med.*

*Care Holdings*, Case No. 1:12-cv-06890 (Doc. No. 25, Sept. 20,

2012). That same day, Fresenius filed a motion for a transfer

of venue of the case from the Northern District of Illinois to

the Northern District of California. *Id.* (Doc. No. 26). In

support of that motion and citing the underlying complaint,

Fresenius USA stated that "Fresenius USA is a Massachusetts

corporation with its principal place of business in Walnut

Creek, California."[6]

---

[6] In their opposition to Plaintiffs' motion for remand,
Defendants note that an amended complaint and answer were filed

## 2. Legal Standard

Although judicial estoppel or waiver by the parties is not available for the purpose of creating subject matter jurisdiction where it does not exist, those conventions could arguably be employed to prevent or reverse removal, which is a procedural device rather than a constitutional limit on jurisdiction. *See Samaan*, 670 F.3d at 28; *Howard* v. *Genentech*, Civ. No. 12-11153, 2013 WL 680200, at *3 (D. Mass. Feb. 21, 2013).

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire* v. *Maine*, 532 U.S. 742, 750 (2001). The doctrine "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." *InterGen N.V.* v. *Grina*, 344 F.3d 134, 144 (1st Cir. 2003). Although the contours of judicial estoppel are "hazy" and "each case tends to turn on its own facts," at least two elements must be satisfied: "First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive. . . . Second, the responsible party must have succeeded in persuading a court to

_____

in the Northern District of Illinois correcting the allegation to state that Fresenius USA's principal place of business is Massachusetts. *See Baxter, Int'l, Inc.* v. *Fresenius Med. Care Holdings*, Case No. 1:12-cv-06890 (Doc. No. 44, Nov. 15, 2012); *id.* (Doc. No. 45, Nov. 29, 2012).

accept its prior position." *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (citations omitted).[7]

### 3. Analysis

A corporation's principal place of business is a single location, making alternative assertions that Fresenius USA's principal place of business is in Massachusetts or in California mutually exclusive propositions under the teaching of *Hertz*. Assuming that Fresenius USA persuaded a court in some of these filings to accept its assertion that its principal place of business was in California, the basic prerequisites for judicial estoppel would be satisfied.[8] *See Alternative Sys.*, 374 F.3d at 33.

---

[7] The First Circuit has explained that a benefit to the party to be estopped is a frequent accompaniment, but not necessary condition, to judicial estoppel. "Judicial acceptance and partisan benefit normally are two sides of the same coin . . . To the extent that there is a separation, however, it is the court's acceptance of the party's argument, not the benefit flowing from the acceptance, that primarily implicates judicial integrity. . . . Thus, benefit is not a sine qua non to the applicability of judicial estoppel." *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (citation omitted).

[8] For example, in the September 2012 motion to transfer, the Northern District of Illinois accepted Fresenius USA's admission that it was a corporation with its principal place of business in California but did not grant the requested transfer order. Under *Alternative Sys.*, 374 F.3d at 33, this would arguably be enough to satisfy the threshold requirements for judicial estoppel, because success in obtaining a benefit flowing from acceptance is not required.

However, satisfaction of the basic prerequisites does not mandate that I apply the doctrine. Judicial estoppel is a discretionary doctrine whose "primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." *Id*. As such, it is typically invoked when a litigant is "playing fast and loose with the court." *Patriot Cinemas, Inc.* v. *Gen. Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987) (quoting *Scarano* v. *Cent. R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)).

The facts here do not warrant application of judicial estoppel. Although Fresenius USA previously averred that its principal place of business was in California, most of those statements were made prior to the Supreme Court's decision in *Hertz*, 559 U.S. 77, and therefore under a different legal regime with a meaningfully different definition of "principal place of business."[9] Because those prior statements may reflect the application of a different legal rule to the relevant facts, they are not necessarily inconsistent with the present

---

[9] Prior to *Hertz*, different circuits applied different tests to determine the location of a corporation's principal place of business. These tests involved, for instance, analysis of the location of the "center of business activities" or "center of gravity" of a corporation and could involve weighing of factors such as locus of manufacturing plants, sales or service centers, or other business activities. See *Hertz Corp.* v. *Friend*, 559 U.S. 77 90-92 (2010). In *Hertz*, the Supreme Court abrogated these various tests, replacing them with the "nerve center" test described above. *Id.* at 92-93.

11

assertion, nor is Fresenius USA's change in approach improper in these circumstances. *See Eagle-Picher Indus., Inc.* v. *American Employers' Ins. Co.*, 678 F. Supp. 15, 17 (D. Mass. 1988) (A change of position "because of an intervening decision by [a superior appellate court] . . . is not the sort of intentional self-contradiction . . . used as a means of obtaining unfair advantage barred by the doctrine of judicial estoppel." (citations omitted)); *see also Balachander* v. *AET Inc. Ltd.*, Civ. No. H-10-4805, 2011 WL 4500048, at *8 (S.D. Tex. Sept. 27, 2011) ("A company's pre-*Hertz* principal place of business may not be its principal place of business post-*Hertz*.").

As to the contrary statements made to the District Court for the Northern District of Illinois post-*Hertz*, those also do not adequately justify judicial estoppel, for different reasons. First, Fresenius USA has specifically disavowed those statements, and they have been corrected before that Court. Moreover, although those statements were accepted at face value by the district court, the district court refused to grant the requested relief. *Cf. Intergen*, 344 F.3d at 144 (determining that case was "poor candidate for judicial estoppel" because it did not present "a situation in which a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage"). If I

were to grant the requested estoppel, it would effectively bind Fresenius USA – and the courts - to a mistaken, counter-factual and disavowed statement from which Fresenius has derived no benefit and which in turn inflicts no unfair disadvantage on any plaintiff.  Accordingly, I decline to exercise my discretion to estop the removal action of Fresenius USA.

## D.   *Conclusion*

As a factual matter, I find Fresenius USA's principal place of business, as well as the state of its incorporation, is located in Massachusetts.  The corporation is diverse from the California Plaintiffs, and it is not an in-state defendant for the purposes of the forum defendant rule.  The citizenship of Fresenius USA, therefore, does not warrant remand of these cases to California state court.

## III. THE CITIZENSHIP OF BEN LIPPS

## A.   *Legal Standard*

For diversity purposes, the citizenship of an individual is determined by the location of his or her domicile.  *Rodriguez-Diaz* v. *Sierra-Martinez*, 853 F.2d 1027, 1030 (1st Cir. 1988).  "A person's domicile is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning."  *Id.* (internal quotation marks and citation omitted).  In other words, it is

"the place where one is present and intends to stay." *Rodriguez* v. *Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 32 (1st Cir. 2011).

A person can have only one domicile at a time, and until a new domicile is affirmatively established elsewhere, domicile is presumed to continue. *See Padilla-Mangual* v. *Pavia Hosp.*, 516 F.3d 29, 31-32 (1st Cir. 2008) (citing *Hawes* v. *Club Ecuestre El Comandante*, 598 F.2d 698, 701 (1st Cir. 1979)). A change in domicile requires (1) presence in the new domicile and (2) an intent to remain there. *Bank One, Texas, N.A.* v. *Montle*, 964 F.2d 48, 50 (1st Cir. 1992). Among the factors relevant to determining this intent include: "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." *Id.* (citations omitted). Defendants, as the party invoking diversity jurisdiction, have the burden of proving by a preponderance of the evidence the domicile of Mr. Lipps as of the time the underlying actions were filed. *See Señor Frog*, 642 F.3d at 32; *Padilla-Mangual*, 516 F.3d at 31.

## B.    *Analysis*

The objective facts, as well as Mr. Lipps' declarations of intent, tell the following story.  Prior to 1996, Mr. Lipps was a citizen of California, where Fresenius USA, of which he was the CEO, was headquartered.  In 1996, when Fresenius USA merged with National Medical Care, Mr. Lipps purchased an apartment in Massachusetts and moved there with his wife.[10]  In 2003, Mr. Lipps' wife returned to California to reside in Newport Beach, while Mr. Lipps continued to live in Boston, leasing a series of apartments.  Mr. Lipps acquired a Massachusetts driver's license in 1996 and registered to vote in Massachusetts.  From 1996 through 2013, Mr. Lipps paid taxes in Massachusetts, Germany, and California based upon the periods of time he spent in each.  When not traveling for work, Mr. Lipps spent the majority of his time in Massachusetts.

In 2012, Mr. Lipps purchased a small home in Nevada.  Between 2012 and 2013, he "transitioned" from Boston to Nevada and in the summer of 2013 "closed up" in Boston and purchased a larger home in Nevada.  He was issued a Nevada driver's license on August 26, 2013 and registered to vote there.  He now considers Nevada to be his state of residence.

---

[10] Mr. Lipps and his wife moved several times among apartments and homes in Boston and the surrounding area.

Based on these facts, it is clear that Mr. Lipps was
domiciled and therefore a citizen of Massachusetts from 1996
until 2013, and that in 2013 he changed his citizenship and
domicile to Nevada.  Plaintiffs attempt to challenge these
reasonable conclusions by arguing that Mr. Lipps' domicile
remained in California despite his spending time in
Massachusetts and Nevada.  In support of this argument,
Plaintiffs point to the activity and residency of Mr. Lipps'
wife in California; the property Mr. Lipps owns in California,
including two vacation homes and various personal property; and
third-party social publications describing Mr. Lipps as living
in Newport Beach, California.[11]

The behavior of a spouse certainly can be a relevant
consideration in determining citizenship, but it is not
determinative.  *See* Restatement (Second) of Conflict of Laws
§ 21 (1971) (rev. Oct. 2014) ("A wife who lives apart from her
husband can acquire a separate domicil of choice."); *see also,*

_____

[11]  I note also that, on January 25, 2013, the District Court for
the Central District of California entered an order observing
that "Defendant Ben Lipps . . . is a resident of Newport Beach,
California."  Reihanifam v. *Fresenius Med. Care North Am.*, Case
No. SA CV 12-1580-DOC (JPRx) at *2 (C.D. Cal. Jan. 25, 2013).
As that order makes clear, however, the Court's statement
reflects only a recitation of the facts as alleged by the
plaintiff in that case; it does not represent an independent
finding of fact.  Neither I nor the present Defendants are bound
by that statement.  Moreover, for the reasons set forth more
fully in Section II.C *supra*, I decline to apply principles of
estoppel to that observation.

*e.g., Lundquist* v. *Precision Valley Aviation, Inc.*, 946 F.2d 8, 19 (1st Cir. 1991); *Alexander* v. *Allister Const. Co.*, 424 F. Supp. 277, 280 (N.D. Ill. 1976). So too does property ownership bear on the assessment of domicile. *See Bank One,* 964 F.2d at 50. But these are just two of numerous factors relevant to the inquiry. *See id.*

Here, these considerations do not outweigh the remainder of the objective evidence placing Mr. Lipps' domicile in Massachusetts and, more recently, in Nevada, since the filing of the underlying actions. This includes his indication that he actually resided in homes in these states, as well as his acquisition of a driver's license and voter registration in each of these states. These actions indicate Mr. Lipps' presence and intent to remain in Massachusetts from 1996 until August 2013 and then in Nevada from August 2013 to the present. *See Bank One,* 964 F.2d at 50. That Mr. Lipps may have owned property and had significant contacts with California does not compromise these conclusions. Accordingly, because Mr. Lipps was not a citizen of California at the time these cases began, Mr. Lipps presence in this lawsuit does not require a remand to state court.

## IV. FRAUDULENT JOINER OF WALTER WEISMAN

I turn finally to whether Mr. Weisman, whose status as a citizen of California is not disputed, has been fraudulently joined to this action in order to defeat diversity and require the cases in which he is a defendant to proceed in California state court, as Defendants contend. In conjunction with this assertion of fraudulent joinder, Mr. Weisman moves for dismissal of the claims against him on the basis that he had no role in or relationship with the allegedly defective products.

### A.    *Legal Standard*

A plaintiff may not thwart the exercise of a defendant's right of removal by fraudulently joining a non-diverse defendant who has no real connection to the case. *See Universal Truck & Equip. Co.* v. *Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014); *Mills* v. *Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1, 4 (D. Mass. 2001). "The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." *Mills*, 178 F. Supp. 2d at 4. Defendants, as the party seeking removal, bear the burden of demonstrating by *clear and convincing* evidence "either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action

against the non-diverse defendant in state court." *Id.* at 5
(adopting the Second Circuit test articulated in *Whitaker* v. *Am.
Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) and quoting
*Whitaker*); *see In re New Eng. Mut. Life Ins. Co. Sales Practices
Litigation*, 324 F. Supp. 2d 288, 298 (D. Mass. 2004)
(recognizing use of *Whitaker* test by judges in this district);
*see also Universal Truck*, 765 F.3d at 108 (observing that "the
First Circuit has not addressed the question" and that "it is
generally recognized that, under the doctrine of fraudulent
joinder, removal is not defeated by the joinder of a non-diverse
defendant where there is no reasonable possibility that the
state's highest court would find that the complaint states a
cause of action upon which relief may be granted against the
non-diverse defendant").

An "implicit finding" within a finding of fraudulent
joinder, then, is "that the plaintiff has failed to state a
cause of action against the fraudulently joined defendant."
*Phillips* v. *Medtronic, Inc.*, 754 F. Supp. 2d 211, 215 (D. Mass.
2011) (quoting *Polyplastics, Inc*. v. *Transconex, Inc*., 713 F.2d
875, 877 (1st Cir. 1983)); *see Universal Truck*, 765 F.3d at 108
(articulating standard of fraudulent joinder in terms mimicking
those of motion to dismiss standard).

Although fraudulent joinder involves a similar substantive standard to a Rule 12(b)(6) motion to dismiss,[12] there is an important procedural distinction. In assessing a claim of fraudulent joinder, the court is not bound by the allegations in the complaint and may consider affidavits and other materials that bear on the question of whether there is a reasonable basis for joinder of a defendant. *Mills*, 178 F. Supp. 2d at 6; *see also Badon* v. *RJR Nabisco Inc.*, 236 F.3d 282, 285 n.3 (5th Cir. 2000) (considering "undisputed summary judgment type evidence" when determining whether any reasonable possibility of recovery under state law existed); *Antony* v. *Duty Free Americas, Inc.*, 705 F. Supp. 2d 112, 115 (D. Mass. 2010) ("[T]he fraudulent joinder doctrine provides an exception to the general rule prohibiting courts from considering evidence extrinsic to the facts in the complaint." (citing *Mills*, 178 F. Supp. 2d at 6)). Indeed, in determining whether a plaintiff has the possibility of recovery against a defendant, the court is to resolve all disputed issues of fact and ambiguities of law in favor of the non-removing party. *Fabiano Shoe Co., Inc.* v. *Black Diamond Equipment, Ltd.*, 41 F. Supp. 2d 70, 71-72 (D. Mass. 1999).

---

[12] Under Federal Rule of Civil Procedure 12(b)(6), a complaint will be dismissed for failure to state a plausible claim for relief that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

**B.  *The Allegations Against Walter Weisman***

Although couched in different language, each of the
California complaints alleges similar facts regarding Mr.
Weisman: that he played an active role in the design,
manufacture, research, testing, marketing, advertising, and
distribution of GranuFlo and NaturaLyte; that, in his role as a
corporate officer of certain Fresenius entities, he knew or
should have known about the unreasonable danger posed to the
public by those products; and that he received an increased
salary or other remuneration based on the sales of those
products.  The allegations in *Olivia Martinez, et al.* v.
*Fresenius Medical Care Holding Inc., el al.*, No. 1:13-cv-12966,
are illustrative:

> Defendant Walter L. Weisman . . . is, and at all times
> herein mentioned was a resident of Los Angeles County,
> State of California and the chairman of Fresenius
> Medical Care's Audit and Corporate Governance
> Committee.  In his role as chairman, Mr. Weisman was,
> at all pertinent times, an active member of Fresenius
> Medical Care's Supervisory Board Committee and played
> an integral role in the monitoring, testing, and
> distribution of the GranuFlo and NaturaLyte products.
>
> Mr. Weisman, as an officer and director with
> Fresenius, maintained a salary that was dependent upon
> the profitability and sales of GranuFlo and
> NaturaLyte.
>
> Further, at all relevant times, Mr. Weisman had active
> and independent knowledge of the dangerous and
> unreasonable risks of increased cardiac risks
> associated with said products.  Instead of taking the
> appropriate measures to provide full and adequate

21

warning to the public, including Decedent and his
healthcare providers, of these hazardous risks and
unsafe propensities, Mr. Weisman knowingly and
intentionally suppressed material facts and
deliberately obfuscated the instructions and warnings
of said products, for the purpose of increasing sales
and profits.

*Martinez*, No. 1:13-cv-12966, Compl. ¶¶ 24-26.

## C.  *Evidence Regarding Mr. Weisman*

Beyond the pleadings, Plaintiffs have had the opportunity

to engage in limited jurisdictional discovery, including both

document discovery and taking the deposition of Mr. Weisman.

Both parties have offered evidence regarding the propriety of

Mr. Weisman's joinder.  I will first consider two evidentiary

challenges raised by Plaintiffs to documents filed by Defendants

before considering the substance of the evidence.  Although the

plaintiffs have withdrawn their motions to strike two

declarations filed by the defendants, one from Mr. Weisman and

another from Dr. Florian Kastle concerning German corporate

government and structures, I nonetheless, pause to define the

scope of my evidentiary review before considering the substance

of the evidence.

### 1.   The Declarations of Mr. Weisman and Dr. Kästle

I may look beyond the pleadings at such documents to

examine evidence when considering a fraudulent joinder claim.

However, this opportunity to look beyond the complaint is not

limitless; some basic principles of evidentiary competence and fairness must necessarily cabin the realm of reviewable material.

Other judges in this district have understandably limited their review of extrinsic evidence to documents and affidavits of the parties themselves. *See, e.g., Antony*, 705 F. Supp. 2d at 115 (considering affidavits of defendants); *Mills*, 178 F. Supp. 2d at 6 (considering affidavits of parties); *see also Simons* v. *Hitachi America, Ltd.*, Civ. No. 06-11895-RWZ, 2007 WL 1306558, at *3-4 (D. Mass. May 3, 2007) (assessing admissibility of proffered testimony and evidence to determine if there was a possibility that plaintiffs could establish cause of action against in-forum defendant; concluding that there was, based on Massachusetts evidentiary rules; and allowing plaintiffs' motion for remand because complete diversity did not exist). This approach suggests that third-party affidavits, particularly those submitted by the defendant and for whom the attesting individual has not been deposed or examined by the plaintiff, may not bear sufficient indicia of reliability, particularly where the evidence is to be construed in the light most favorable to the plaintiff. *Fabiano Shoe*, 41 F. Supp. 2d at 71-72. If I am satisfied that the defendant has established the evidentiary validity of the proffered statements, then perhaps

they can be considered, but a third-party affidavit standing alone, without verification, is likely inadequate.

Under that approach, Mr. Weisman's declaration and his deposition may properly be considered, but Dr. Kästle's declaration may not. Dr. Kästle offers pseudo-expert testimony regarding German corporate governance, but Defendants do not appear to offer Dr. Kästle as an expert. Indeed, there is nothing to suggest that Dr. Kästle would be qualified as an expert, aside from his assertion that he has practiced law in Germany for 19 years," "specialize[s] in corporate law and corporate governance and regularly advise[s] German clients on matters of corporate governance." Further, Plaintiffs have had no opportunity to cross-examine Dr. Kästle regarding the contents of his declaration. Given these deficiencies, I will not consider Dr. Kästle's declaration, because it does not describe factual matters of which Dr. Kästle has first-hand knowledge, and the proponents of his declaration have not demonstrated that it qualifies as expert testimony satisfying Federal Rule of Evidence 702.

2. Evidence Regarding Mr. Weisman

In his deposition and his declaration, Mr. Weisman has explained that since 2006, he has been a member of the Supervisory Board of Fresenius Medical Care Management AG

24

("Fresenius AG"), a German stock corporation, and a member of the Supervisory Board of Fresenius Medical Care AG & Co. KGaA ("Fresenius KGaA"), a German limited partnership. Fresenius AG is the general partner and manager of Fresenius KGaA. Mr. Weisman also serves as chairman of the Audit and Corporate Governance Committee of the Supervisory Board of Fresenius KGaA. From 1996 to 2006, he was a member of the Supervisory Board of Fresenius Medical Care AG, a predecessor entity, which was reorganized as a partnership and renamed as Fresenius KGaA.

Mr. Weisman holds no position with any of the Fresenius corporate entities named as defendants in these lawsuits; he is not an officer, executive, director, board member, or employee of any of these entities. The two Fresenius entities with which he is affiliated, Fresenius AG and Fresenius KGaA, are holding companies, rather than operating entities, and the Supervisory Boards have no direct power to affect the operating activities of the United States subsidiaries which are the corporate defendants in the present lawsuits. Mr. Weisman testified that the only power of the Supervisory Boards on which he sits is to change the membership of the management board of those corporate entities. Mr. Weisman first became aware of the issues with GranuFlo and NaturaLyte only after those issues became public and were the subject of news articles.

**D.    *Whether There Exists a Possibility of Recovery Against Mr. Weisman***

Plaintiffs articulate various legal theories which they contend establish a possible route to recovery against Mr. Weisman, including strict liability, breach of warranty, negligence, fraudulent concealment, deceit, and wrongful death. I will consider these theories in three categories based on California law: individual liability for intentional torts, strict liability under California's responsible corporate officer doctrine, and strict product liability for marketing and distributing a defective product.  These theories uniformly fail as to Mr. Weisman for the same reason: they each require some degree of personal involvement in the alleged tortious conduct, which Plaintiffs have not adequately pleaded.

### 1.    Individual Liability as a Corporate Director for Intentional Tortious Conduct

A corporate director or officer may be liable in his or her personal capacity for allegedly tortious conduct that he or she "specifically authorized, directed or participated in." *Frances T.* v. *Village Green Owners Ass'n*, 723 P.2d 573, 583-84 (Cal. 1986) (in bank) (citations omitted); *see PMC, Inc.* v. *Kadisha*, 78 Cal. App. 4th 1368, 1379 (Cal. App. 2000) ("Corporate director or officer status neither immunizes a person from personal liability for tortious conduct nor subjects him or her

to vicarious liability for such acts."). He or she may also be liable for negligent failure "to take or order appropriate action to avoid the harm" to a plaintiff where he or she "specifically knew or reasonably should have known that some hazardous condition or activity under [his or her] control could injure plaintiff."[13] *Frances T.*, 723 P.2d at 584. Where, however, an officer or director did not personally participate in the tortious conduct, has no knowledge of it, or did not consent to it, he or she will not be held individually liable. *Id.* at 580. In other words, unless the individual officer or director "authorizes, directs, or in some meaningful sense actively participates in the wrongful conduct," he or she cannot be held liable. *Id.* (citation omitted). "Knowing consent to or approval of unlawful acts" is what gives rise to liability. *PMC, Inc.*, 78 Cal. App. 4th at 1380.

Plaintiffs' pleadings and arguments, taken as true and considered together with the available evidence, fail to present even the possibility that this standard could be satisfied as to Mr. Weisman. The uncontradicted evidence indicates that Mr. Weisman was a member of a Supervisory Board of a corporate

---

[13] In order to establish individual liability of a corporate officer or director for tortious conduct, a plaintiff must also establish "that an ordinarily prudent person, knowing what the director knew at that time, would not have acted similarly under the circumstances." *Frances T.* v. *Village Green Owners Ass'n*, 723 P.2d 573, 584 (Cal. 1986) (in bank).

parent of the Fresenius entities that are defendants here. Mr.

Weisman knew nothing about NaturaLyte or GranuFlo and had no

operational responsibilities for any entity in his role as a

member of the parent companies' Supervisory Boards.[14] After

taking discovery, Plaintiffs have failed to produce any evidence

suggesting the existence of red flags that were brought to Mr.

Weisman's attention, but that he ignored, or indicia of his

personal knowledge or involvement with the allegedly defective

products, or any other misfeasance or nonfeasance on his part

which would give rise to liability. Accordingly, there is no

reasonable basis in law or fact on which claims for intentional

torts could be brought against Mr. Weisman by these Plaintiffs.

    2. <u>Liability Under the Responsible Corporate Officer</u>
<u>Doctrine for Strict Liability Conduct</u>

    Plaintiffs also allege that Mr. Weisman is liable for

violating strict liability statutes pursuant to the responsible

corporate officer doctrine, which is a distinct ground for

liability from the "impos[ition] [of] personal liability for

direct participation in tortious conduct" and from "piercing the

---

[14] Because I grant Plaintiffs' motion to strike the declaration
of Dr. Kästle, I decline to consider Defendants' assertions that
German law, which governs the holding companies on whose boards
Mr. Weisman serves, specifically precludes supervisory board
members from participating in company management. The facts
established as to Mr. Weisman's lack of personal knowledge or
involvement in operational decisions are sufficient to
demonstrate that there is no plausible claim against Mr. Weisman
on the basis of his role as a corporate director.

corporate veil" to impose liability.  *People* v. *Roscoe*, 169 Cal. App. 4th 829, 831 (Cal. App. 2008).  The responsible corporate officer doctrine allows for the imposition of liability on an officer for a corporation's conduct in some cases if three elements are satisfied: "(1) the individual must be in a position of responsibility which allows the person to influence corporate policies or activities; (2) there must be a nexus between the individual's position and the violation in question such that the individual could have influenced the corporate actions which constituted the violations; and (3) the individual's actions or inactions facilitated the violations." *Id*. at 839 (quoting *Matter of Dougherty*, 482 N.W.2d 485, 490 (Minn. Ct. App. 1992)).

Again, Plaintiffs have failed to establish this as a possible basis for recovery against Mr. Weisman.  There is no evidence that Mr. Weisman had any connection with, supervision over, or knowledge of, the allegedly defective products, nor that he should have had such knowledge.  Thus, there is no "nexus" between Mr. Weisman's position and the violation, such that he could or should have influenced any decisions made about these products.  For these reasons, Plaintiffs cannot rely on

the assertion of the responsible corporate officer doctrine to establish a cause of action against Mr. Weisman.[15]

### 3. Strict Product Liability for Marketing and Distributing a Defective Product

Finally, Plaintiffs assert a "stream-of-commerce" theory of strict product liability against Mr. Weisman. The product liability doctrine in California "provides generally that manufacturers, retailers, and others in the marketing chain of a product are strictly liable in tort for personal injuries caused by a defective product." *Peterson* v. *Superior Court*, 899 P.2d 905, 906 (Cal. 1995). Liability for defective products and for failure to warn extends from the manufacturer to others "in the chain of distribution of the injury-causing manufactured product," including successor corporations and retailers, using "the 'stream of commerce' theory," and can attach "even if the defendant did not have actual possession of the defective

---

[15] The basis for Plaintiffs' assertion of this ground for liability is not fully articulated. To invoke this ground for liability, a plaintiff must allege that the defendant has violated an applicable state law that constitutes a public welfare statute "intended to improve the common good." *Matter of Dougherty*, 482 N.W.2d 485, 489 (Minn. Ct. App. 1992) (applying reasonable corporate officer doctrine where state hazardous waste laws applied); *see People* v. *Roscoe*, 169 Cal. App. 4th 829, 831 (Cal. App. 2008) (applying reasonable corporate officer doctrine where state tank laws applied). In their opposition to Mr. Weisman's motion to dismiss, Plaintiffs do not specifically articulate the operative California statute that would permit the application of the reasonable corporate officer doctrine and instead merely assert that Mr. Weisman "allowed the subject defective products to remain freely distributed to patients throughout the world."

30

product or control over the manner in which the product was designed or manufactured." *Taylor* v. *Elliott Turbomachinery Co.*, 171 Cal. App. 4th 564, 575 (Cal. Ct. App. 2009) (internal quotation marks and citations omitted).

In order to establish liability, there must be an adequate nexus between the defendant and the product. *Id.* Such a nexus is present if: "(1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process." *Bay Summit Cmty. Ass'n* v. *Shell Oil Co.*, 51 Cal. App. 4th 762, 776 (Cal. App. 1996). Under this analysis, "[i]t is the defendant's participatory connection, for his personal profit or other benefit, with the injury-producing product and with the enterprise that created consumer demand for and reliance upon the product . . . which calls for imposition of strict liability." *Kasel* v. *Remington Arms Co.*, 24 Cal. App. 3d 711, 725 (Cal. App. 1972).

As with the other legal theories, Plaintiffs cannot establish the necessary "participatory connection" with the

injury-producing product.  Mr. Weisman did not engage in any conduct which was a "necessary factor in bringing the product to the initial consumer market" nor did he have "control over, or a substantial ability to influence, the manufacturing or distribution process."  *See Bay Summit*, 51 Cal. App. 4th at 776. The relationship between Mr. Weisman, a member of the supervisory board of a German holding company, which is not a named defendant and does not engage in operational activities, and the allegedly defective products, of which Mr. Weisman had no knowledge, is simply too attenuated for liability to be imposed.  Plaintiffs' pleadings accordingly fail to establish the requisite nexus for strict product liability for Mr. Weisman.

**E.    *Conclusion on Fraudulent Joinder***

Because the evidence, discussed above and uncontradicted by the Plaintiffs, demonstrates that Mr. Weisman did not have any personal involvement in or direct connection to the alleged tortious conduct, there is no possibility that Plaintiffs can state a cause of action against Mr. Weisman.  Accordingly, he must be dismissed from the cases.  *See Phillips*, 754 F. Supp. 2d at 215.  His absence as a non-diverse defendant in these cases cannot defeat diversity or otherwise require remand.

## V.  CONCLUSION

For the reasons above, I will DENY Plaintiffs' Omnibus Motion to Remand (Dkt. No. 468) and GRANT Defendant Walter Weisman's Motions to Dismiss (Dkt. No. 455 and 474).


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

# APPENDIX A

**Cases Filed in California state courts
In which Fresenius, U.S.A., Ben Lipps, and/or Walter Weisman
Have been named as defendants
And as to which motions relevant to this memorandum
Have formally been submitted**

| Plaintiff Name | Case Number |
|---|---|
| David Brown | 1:13-cv-12920 |
| Dawn Casian | 1:13-cv-12529 |
| Daniel Ray Darnell | 1:13-cv-11985 |
| Mary Frank | 1:13-cv-11816 |
| Alexis Goldberg | 1:13-cv-12913 |
| Kimberly Johnson | 1:13-cv-12283 |
| Olivia Martinez | 1:13-cv-12966 |
| Aurora Nunez | 1:13-cv-11986 |
| Daisy Shaver | 1:13-cv-12921 |
| Joseph Thiede | 1:13-cv-11818 |
| Yvonne H. Tate | 1:13-cv-13222 |
| Kelly Jennings | 1:13-cv-13190 |